UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BILLY SCHUMANN and DUSTIN
ABRAHAM, ON BEHALF OF THEMSELVES
AND OTHERS SIMILARLY SITUATED,

        Plaintiffs,

vs.

COLLIER ANESTHESIA, P.A., a Florida
corporation, WOLFORD COLLEGE, LLC, a
Florida limited liability company, THOMAS L.
COOK, an individual, and LYNDA M.
WATERHOUSE, an individual,

        Defendants.

_____/

CASE NO.: 2:12-cv-347-FtM-29SPC
COLLECTIVE ACTION

## MOTION TO CONDITIONALLY CERTIFY
## COLLECTIVE ACTION, AND TO FACILITATE NOTICE,
## AND FOR LIMITED EXPEDITED DISCOVERY

Plaintiffs, Billy Schumann and Dustin Abraham, by and through undersigned counsel, and pursuant to 29 U.S.C. § 216(b), hereby move the Court to conditionally certify a collective and class action, to facilitate notice to potential plaintiffs, and to require expedited responses to discovery in this action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et. seq.* ("FLSA").

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 3.01, counsel for Plaintiffs has conferred in good faith to resolve the issues contained herein by contacting counsel for Defendants.  Counsel does not agree on the resolution of the motion.

## I. BACKGROUND

This suit seeks to redress the failures to pay overtime and minimum wages by Collier Anesthesia, P.A. ("Collier Anesthesia"), Wolford College, LLC ("Wolford"), Thomas L. Cook ("Cook"), and Lynda M. Waterhouse ("Waterhouse") (collectively "Defendants") to interns.

### A. The Defendants

Collier Anesthesia is a Florida Profit Corporation,[1] which operates as a medical practice, specializing in anesthesiology and providing anesthesia services at healthcare facilities, such as Naples Day Surgery, North Collier Hospital, The Birthing Center, Bonita Community Health Center, and the Naples Community Hospitals.   [*See* Exhibit "A," Wolford College, LLC, http://www.wolford.edu/academics/clinical_sites.php (as it appeared July 10, 2012) (subsequently removed) ("Wolford Clinical Sites")].   Since at least 1996, Cook has served as Collier's Anesthesia's President.  [*See* Composite Exhibit "B," For Profit Corporation Annual Reports of Collier Anesthesia ("Collier Anesthesia Annual Reports") from 1996 - 2012].  Since 2008, Waterhouse has also served Collier Anesthesia as an officer of the company.  [*See* Comp. Ex. B, Collier Anesthesia Annual Reports 2008 – 2012].

Wolford is a Florida Limited Liability Company,[2] which operates as a single purpose college that purports to train registered nurses in the field of nurse anesthesia. [*See* Wolford College, LLC, http://www.wolford.edu/about/about.php (last visited August 6, 2012)].  As

---

[1] *See* Complaint and Demand for Jury Trial, DE #1 ¶ 8; Answer and Affirmative Defenses of Collier Anesthesia, P.A. ("Collier Anesthesia Answer"), DE #16 ¶ 8.

[2] *See* Defendants Wolford College LLC, Thomas L. Cook, and Lynda M. Waterhouse's Answer and Affirmative Defenses to Plaintiff's Complaint ("Wolford Answer"), DE #17 ¶ 9.

President of Collier Anesthesia, Cook founded Wolford [*see* Exhibit "C," Wolford College, LLC, http://www.wolford.edu/about/history.php (as it appeared July 9, 2012) (subsequently removed)], and has served for Wolford as Chairman [*see* Exhibit "D," Page 8 of Wolford College Catalog (2012 ed. revised January 20, 2012)]  and Managing Member/Manager at least since Wolford filed its July 24, 2008 Electronic Articles of Organization for Florida Limited Liability Company ("Wolford Articles of Organization").  [Exhibit "E," Wolford Articles of Organization, Article V; Composite Exhibit "F," Limited Liability Company Annual Reports of Wolford ("Wolford Annual Reports") from 2009 – 2012; and Exhibit "G," June 26, 2012 Articles of Amendment to Articles of Organization of Wolford College, LLC, Article V ("Wolford Articles of Amendment")].  As an Officer of Collier Anesthesia, Waterhouse has also served as Managing Member/Manager of Wolford since at least 2010 [*See* Wolford Annual Reports 2010 – 2012; Wolford Articles of Amendment].  Indeed, at all times, Wolford's Managing Managers/Members have consisted entirely of Collier Anesthesia Officers/Directors and/or physicians.  [*Compare* Wolford Articles of Organization and Wolford Annual Reports *with* Collier Anesthesia Annual Reports from 2008 - 2012].[3]

### B. Wolford Students Work As An Integral Part Of Collier Anesthesia's Practice

At Wolford, the Masters of Science in Nurse Anesthesia program is twenty-eight (28) months long.  [*See* Wolford College, LLC, http://www.wolford.edu/academics/msnurse.php

---

[3] Days before this lawsuit was filed, Wolford amended its Articles of Organization to show that Wolford is managed by thirteen (13) Members, as opposed to two Managers (Cook and Waterhouse).  [Wolford Amendment].  Six (6) of the thirteen (13) Members are the six (6) current Officers/Directors of Collier Anesthesia (including without limitation Cook and Waterhouse).  [*Compare* Wolford Amendment *with* Collier Anesthesia Annual Report from 2012]. Upon information and belief, the remaining seven (7) Members of Wolford were all physicians practicing with Collier Anesthesia at the time of the Wolford Amendment.

(last visited August 6, 2012)].  The initial twelve (12) months for the students are primarily didactic in nature.  [*See id.*].  For the remaining sixteen (16) months, students primarily work as interns (called Student Registered Nurse Anesthetists or SRNAs) at clinical sites.  [*See id.*; Wolford Clinical Sites].  During this time, students are required to work as an intern for a minimum of forty (40) hours per week. [*See* Exhibit "H," Wolford College, LLC, http://www.wolford.edu/academics/clinical.php (as it appeared July 10, 2012) (subsequently removed) ("Wolford Clinical Stage")].   Wolford has two main clinical affiliation hubs, Naples and North Tampa. [*Id.*].  Collier Anesthesia operates Wolford's Naples clinical hub as part of its practice.  [*See* Clinical Sites; Exhibit "I," Pages 53-54 of Wolford College Handbook (Class of 2012(a) ed. Revised January 2010) ("Wolford Handbook"); Exhibit "J," August 14, 2012, Declaration of Billy Schumann ("Schumann") ¶¶ 1, 7-17, 22-23; Exhibit "K," August 18, 2012, Declaration of Dustin Abraham ("Abraham") ¶¶ 1, 7-17, 21-22; Exhibit "L," August 16, 2012, Declaration of Lahoma Nachtrab ("Nachtrab") ¶¶ 1, 7-17, 21-22;  Exhibit "M," August 16, 2012, Declaration of Celine Vidaurri ("Vidaurri") ¶¶ 1, 7-17, 21-22;  Exhibit "N," August 18, 2012, Declaration of Denise Arminio ("Arminio") ¶¶ 1, 7-17, 21-22].

To this end, students from Wolford work at Collier Anesthesia as interns.  [Schumann ¶ 1; Abraham ¶ 1; Nachtrab ¶ 1; Vidaurri ¶ 1; Arminio ¶ 1].  The interns perform the job duties of Certified Registered Nurse Anesthetists (CRNAs) and Anesthesia Techs. [Schumann ¶¶ 2-5; Abraham ¶¶ 2-5; Nachtrab ¶¶ 2-5; Vidaurri ¶¶ 2-5; Arminio ¶¶ 2-5].  The interns often receive little to no supervision from CRNAs, and often report to physicians, the same as a CRNA.  [Schumann ¶¶ 6, 13; Abraham ¶¶ 6, 13; Nachtrab ¶¶ 6, 13; Vidaurri ¶¶ 6,

13; Arminio ¶¶ 6, 13]. In fact, the interns often displace CRNAs and Anesthesia Techs in the workplace altogether. [Schumann ¶¶ 7-15, 22-23; Abraham ¶¶ 7-15, 21-22; Nachtrab ¶¶ 7-15, 21-22; Vidaurri ¶¶ 7-15, 21-22;  Arminio ¶¶ 7-15, 21-22].

Similarly, the interns are scheduled for work by Collier Anesthesia according to the business needs of Collier Anesthesia, as opposed to the educational needs of the intern. [Schumann ¶¶ 16-17; Abraham ¶¶ 16-17; Nachtrab ¶¶ 16-17; Vidaurri ¶¶ 16-17;  Arminio ¶¶ 16-17]. As a consequence, because the interns are necessary to staff Collier Anesthesia's orthopedic and endoscopy cases, the interns often miss out on exposure to other kinds of required cases. [Schumann ¶ 17; Abraham ¶ 17; Nachtrab ¶ 17; Vidaurri ¶ 17; Arminio ¶ 17]. Moreover, in working for Collier Anesthesia, interns are routinely subjected to verbal abuse and inappropriate intimidation. [Schumann ¶¶ 18-21; Abraham ¶¶ 18-20; Nachtrab ¶¶ 18-20; Vidaurri ¶¶ 18-20;  Arminio ¶¶ 18-20].

Collier Anesthesia intentionally and knowingly uses the interns as free labor in place of employees. [*See* Schumann ¶¶ 7-16; Abraham ¶¶ 7-16; Nachtrab ¶¶ 7-16; Vidaurri ¶¶ 7-16;  Arminio ¶ 7-16]. Significantly, without the interns, Collier Anesthesia would require approximately 50% greater CRNA coverage for its cases, as it uses student interns for essential tasks in lieu of compensating hourly employees to perform the work. [*See* Schumann ¶¶ 3, 7-14; Abraham ¶¶ 3, 7-14; Nachtrab ¶¶ 3, 7-14; Vidaurri ¶¶ 3, 7-14; Arminio ¶¶ 3, 7-14]. Indeed, as shown above, and as shown in the Declarations filed in support of this motion, through the employment of the interns, Collier Anesthesia derives a substantial and immediate economic benefit. [*See* Schumann ¶¶ 22-23; Abraham ¶¶ 21-22; Nachtrab ¶¶ 21-22; Vidaurri ¶¶ 21-22;  Arminio ¶¶ 21-22].

Plaintiffs are Wolford students working at Collier Anesthesia as interns. [Schumann ¶ 1; Abraham ¶ 1; Nachtrab ¶ 1; Vidaurri ¶ 1; Arminio ¶ 1]. Plaintiffs were required by Collier Anesthesia to work for the company in excess of forty (40) hours per week [Schumann ¶ 24; Abraham ¶ 23; Nachtrab ¶ 23; Vidaurri ¶ 23; Arminio ¶ 23], and Plaintiffs received no compensation from Defendants for their work in violation of the minimum wage and overtime provisions of the FLSA. [*See* Schumann ¶ 25; Abraham ¶ 24; Nachtrab ¶ 24; Vidaurri ¶ 24; Arminio ¶ 24].

### C. Defendants' Assertions That Plaintiffs Are Not Employees And Do Not Have Standing Are Baseless

Defendants erroneously assert that Plaintiffs were not employees subject to the FLSA and therefore do not have standing to bring this lawsuit. [*See* Collier Answer ¶ 4, Affirmative Defenses 3, 4; Wolford Answer ¶¶ 3-4, Affirmatives Defenses 1, 2, 4]. Defendants are wrong.

### 1. The Employment Relationship Under the FLSA Generally

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee;" defines "employee" as "any individual employed by an employer;" and defines "employ" as "to suffer or permit to work." 29 U.S.C. §§ 203(d), 203(e)(1), 203(g). The Supreme Court defined "work or employment" as activity that was: (1) "controlled or required by the employer," and (2) "pursued necessarily and primarily for the benefit of the employer and his business." *Coes v. World Wide Revival*, Case No. 6:05-cv-563-Orl-DAB, 2007 U.S. Dist. LEXIS 7144, at *11 (M.D. Fla. Sept. 26, 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 693 (1946)). Since the FLSA is a remedial statute, courts apply an expansive definition of "employee." *Usery v.*

*Pilgrim Equipment Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976);[4] *see also Harrell v. Diamond A. Entertainment*, 992 F. Supp. 1343, 1348 (M.D. Fla. 1997) (noting that "employment is defined with striking breadth," and that the "suffer or permit to work standard . . . has been called the broadest definition [of employment] that has ever been included in one act." (internal citations and quotations omitted))".

Whether an employment relationship exists under the FLSA should be judged by the "economic realities" of the situation. *Donovan v. New Floridian Hotel*, 676 F.2d 468, 470 (11th Cir. 1982). It is irrelevant that the parties may not have intended to create an employment relationship. *See id.* at 470-471. Likewise, "[w]hat the parties themselves label the relationship is not determinative." *Coes*, Case No. 6:05-cv-563-Orl-DAB, 2007 U.S. Dist. LEXIS 7144, at *12.

For instance, "an employment relationship may exist for the purposes of the FLSA even when the employees consider themselves 'volunteers' who work for religious reasons." *Id.* at 15. Further, "an employment relationship may exist if the alleged employer permits an individual to work for the employer, although the employer had not expressly hired that individual." *Id.* at 16.[5] Recently, the United States District Court for the Middle District of Florida found that "the manner in which Plaintiffs were actually treated" controlled whether

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit before October 1, 1981.

[5] *See also Reich v. Shiloh True Light Church of Crist*, 895 F. Supp. 799, 819 (W.D.N.C. 1995) (children enrolled in church-run vocational training program were employees); *Marshall v. Baptist Hosp., Inc.*, 473 F. Supp. 465, 477 (M.D. Tenn. 1979), *rev'd in part on other grounds*, 668 F. 2d 234 (6th Cir. 1981) (X-ray technicians-in-training working at a hospital as part of their college program were employees).

there was an employment relationship. *See Jatupornchaisri v. Wyndham Vacation Ownership*, Case No. 6:12-cv-59-Orl-31GJK, 2012 U.S. Dist. LEXIS 63633, at *5 (M.D. Fla. May 7, 2012).

   *2. Internships In The "For Profit" Private Sector Under the FLSA Specifically*

   Different tests have been applied to determine whether an intern working for a private sector "for-profit" employer, like Collier Anesthesia, is an employee under the FLSA. Under any of the tests, given the circumstances, the subject interns were employees.

   Pursuant to the United States Department of Labor Wage and Hour Division, for example, interns are considered employees of "for-profit" private sector employers such as Collier Anesthesia unless <u>all</u> of the following six factors are satisfied.

   1.   The internship, even though it includes actual operation of the facilities of the employer, is similar to training given in an educational environment;

   2.   The internship experience is for the benefit of the intern;

   3.   The intern does not displace regular employees, but works under close supervision of existing staff;

   4.   The employer that provides the training derives no immediate advantage from the activities of the intern; and on occasion its operations may actually be impeded;

   5.   The intern is not necessarily entitled to a job at the conclusion of the internship; and

   6.   The employer and the intern understand that the intern is not entitled to wages for the time spent in the internship.

*See* Department of Labor, Field Operations Handbook, § 10b11 (1993), *available at* http://www.dol.gov/whd/FOH/; Department of Labor Wage and Hour Division, Fact Sheet

#71: Internship Programs Under the Fair Labor Standards Act (April 2010), *available at* http://www.dol.gov/whd/regs/compliance/whdfs71.htm, attached as Exhibit "O;" *see also Atkins v. General Motors*, 701 F.2d 1124, 1127-28 (5th Cir. 1983); *Donovan v. American Airlines*, 686 F.2d 267, 273 and n. 7 (5th Cir. 1982); *Ulrich v. Alaska Airlines*, Case No. C07-1215RSM, 2009 U.S. Dist. LEXIS 10104, at *7 - *8 (W.D. Wash., February 9, 2009); *Saudi Arabian Airlines Corp. v. Dunn*, 438 So. 2d 116, 119-120 and n. 4 (Fla. 1st Dist. Ct. App. 1983); *but see Solis v. Laurelbook Sanitarium and School, Inc.*, 642 F. 3d 518, 520, 525-526 (6th Cir. 2011) (not adhering to the six factor test in a training or educational setting, where the facility – which was a non-profit – was staffed such that if the students were not training, staff members could continue providing the same services, and the facility's sole purpose was to serve as a training vehicle for its students as part of a religious mission).[6]   While some courts have

---

[6] To determine the propriety of an unpaid internship under the FLSA and if the internship benefitted the intern, in being interviewed for a journal article, a then Partner with Wolford, Cook, and Waterhouse's law firm, Ford and Harrison LLP, focused on whether the intern is being used to displace employees, as well as the six factor test as follows:

> The fundamental, basic requirement of an internship is that the intern benefit from the experience, said William Grob, a partner with the Tampa office of labor and employment law firm Ford & Harrison LLP. "The question becomes, in a tough economy, how many companies are using interns to displace workers and save money?"
>
> **A six-prong test developed under the Fair Labor Standards Act can answer this question, Grob said.**
>
> **Companies should bear in mind that interns should not displace regular employees.  If an intern is doing something an employee would do, like running a cashier or stocking shelves, and replaces a regularly scheduled employee, that creates a problem, Grob said.**

adopted the Department of Labor test to determine when interns are considered employees of "for-profit" private sector employers (*see id.*), other courts have adopted a less rigid application of the test (*see*, *e.g.*, *Reich v. Parker Fire Prot. Dist.*, 1992 F.2d 1023, 1025-27 (10th Cir. 1993)), and/or rejected the test in favor of making a determination of whether the employer or the intern derives the primary benefit from the relationship. *See Solis*, 642 F. 3d at 524-529.[7]

The Eleventh Circuit finds that the Department of Labor Field Operations Handbook is persuasive authority (*Klinedinst v. Swift Investments*, 260 F.3d 1251, 1255 (11th Cir. 2001)), but has not addressed the specific issue of determining when an intern is an employee of a for-profit private sector employer, like Collier Anesthesia. Here, no matter the approach, all roads lead to the same conclusion. As the interns worked for Collier Anesthesia full-time in the private sector; worked for the benefit of Collier Anesthesia; provided Collier Anesthesia a substantial and immediate economic benefit; displaced Collier Anesthesia employees and staff; often received little to no CRNA supervision; were scheduled by Collier Anesthesia according to Collier Anesthesia's business needs; and were routinely subjected to verbal abuse in the workplace, for FLSA purposes, Collier Anesthesia employed the interns.

---

Margaret Carshill, *Properly Managed Internships A Benefit To All*, Tampa Bay Bus. J. (Sept. 6, 2010) (emphasis added) (announced by Ford and Harrison LLP at http://www.fordharrison.com/6542, last visited August 19, 2012), attached as Composite Exhibit "P."

[7] In *Solis*, the Sixth Circuit rejected the Department of Labor six factor test. *Id.* at 525. The facts of *Solis*, however, are the inverse of the subject case. Unlike here, in *Solis*, the facility was a non-profit corporation. *Id.* at 520. Further, the sole purpose of the facility was to serve as a training vehicle for students as part of a religious mission. *Id.* at 520-21. Further, the facility was staffed such that if the students were not training, staff members could continue providing the same services. *Id.* at 520.

### D. Other Interns Want To Participate In This Lawsuit

To date, twelve (12) interns have consented to join the original Plaintiffs in this action.  [DE #6, #7, #8, #9, #10, #11, #12, #15, #19, #20, #23, #27].   Other interns desire to join the case.  [Schumann ¶ 27; Abraham ¶ 26; Nachtrab ¶ 26; Vidaurri ¶ 26; Arminio ¶ 26]. Other interns would join the case if made aware of it.  [Schumann ¶ 28; Abraham ¶ 27; Nachtrab ¶ 27; Vidaurri ¶ 27; Arminio ¶ 27].  Some interns fear retaliation from Defendants if they were to join the case (which would be illegal under the FLSA).  [Schumann ¶ 29; Abraham ¶ 28; Nachtrab ¶ 28; Vidaurri ¶ 28; Arminio ¶ 28].  In all, there are approximately one hundred and fifty (150) similarly situated individuals who could participate in the case. [Schumann ¶ 26; Abraham ¶ 25; Nachtrab ¶ 25; Vidaurri ¶ 25; Arminio ¶ 25].

## II. ANALYSIS

### A. Collective Action Is Appropriate In This Case

#### 1. The Threshold for Certifying an FLSA Collective Action is Low

Section 216(b) of the FLSA authorizes employees to, among other things, bring "collective actions" against their employers for violations of the FLSA. This section provides in relevant part as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . .  An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by *any one or more employees for an in behalf of himself or themselves and other employees similarly situated.* No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a

> party and such consent is filed in the court in which such action
> is brought. . .

29 U.S.C. 216(b)(emphasis added). Although 216(b) does not specifically provide procedural guidance concerning the maintenance of collective actions, it is well settled that district courts have discretionary power to certify a collective class and authorize notice to all putative class members. *See Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165 (1989); *Dybach v. Fla. Dept. of Corrections,* 942 F.2d 1562 (11th Cir. 1991).

The threshold to determining whether to conditionally certify the class under the FLSA is very low. This Court must only determine: (1) whether there are other employees who desire to opt-in; and (2) whether these employees could be similarly situated with respect to their job requirements and pay provisions. *See Dybach,* 942 F.2d at 1567-68.

In *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208 (11th Cir.2001), the Eleventh Circuit detailed the procedure that this Court is to use in certifying collective actions under section 216(b). *See Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1243 n. 2 ("*Hipp* outlined a two-tiered procedure that district courts should use in certifying collective actions under § 216(b)").

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision--usually based only on the pleadings and any affidavits which have been submitted--whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

*Hipp*, 252 F.3d. at 1218.

It is not appropriate for the Court to consider the merits of the dispute at this stage. "Even if plaintiffs' claims turn out to be meritless, or in fact, all plaintiffs turn out not to be similarly situated, notification at this state, rather than after further discovery, may enable the more efficient resolution of the underlying issue in this case." *Harrison v. Enterprise Rent-A-Car Co.*, Case No. 98-233-CIV-T-24(A), 1998 U.S. Dist. LEXIS 13131, at *14 (M.D. Fla. July 1, 1998) (*quoting Krueger v. New York Te/ Co.*, 1993 U.S. Dist. LEXIS 9988, *2 (S.D.N.Y. July 21, 1993); *Pendlebury v. Starbucks Coffee Company*, Case No. 04-80521-CIV-MARRA/SELTZER, 2005 U.S. Dist. LEXIS 574, at *11 (S.D. Fla. Jan. 3, 2005) (holding that factual assertions regarding potential opt-in plaintiffs were "not appropriate for consideration at the notice stage of the litigation."); *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 682 (D. Kan. 2004) ("The court will examine the individual plaintiffs' disparate factual and employment settings, as well as the various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery."); *Leuthold v. Destination America*, 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class"); *Goldman v. Radioshack Corp.*, Case No. 2:03-CV-032, 2003 LEXIS 7611, at *27 (E.D. Pa. April 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant.").

In *Zimmerman v. Netco, Inc.*, Case No. 2:04-cv-234-FtM-33SPC (M.D. Fla. March 1, 2005, Order adopting Report and Recommendation of Magistrate Judge Chappell of

February 8, 2005), attached as Composite Exhibit "Q," this Court succinctly summarized the

issues associated with determination of the appropriateness of an FLSA collective action:

> This determination is usually based on the pleadings and affidavits and
> is made using "a fairly lenient standard and <u>typically results in
> conditional certification</u>." The "similarly situated" requirement does
> not require identical positions and the <u>Plaintiff s burden is not heavy</u>.
>
> The second determination, whether or not the plaintiffs are actually
> similarly situated, is typically precipitated by a motion for
> decertification by the defendant usually filed after discovery is almost
> complete. Whether or not to allow the FLSA claim to proceed as a
> collective action is committed to the sound discretion of the Court.
> <u>However at this point in the proceedings the Court is not concerned
> with the second determination.</u>

*Id.* (internal citations omitted and emphasis supplied).

### *2. Other Interns Desire to Opt-In*

In this case, it is clear that other interns desire to opt-in to the lawsuit.  For instance,

to date, twelve (12) interns have filed notices of consent to opt-in this action.  Additionally,

Plaintiffs filed five (5) Declarations showing that other interns desire to join this lawsuit. [*See*

Schumann ¶¶ 27-29; Abraham ¶¶ 26-28; Nachtrab ¶¶ 26-28; Vidaurri ¶¶ 26-28; Arminio ¶¶

26-28].  This evidence is more than sufficient to establish that other interns wish to join this

lawsuit. *See Espanol v. Avis Budge Car Rental, LLC.*, Case No. 8:10-cv-944-T-30AEP, 2011

U.S. Dist. LEXIS 120485, at *5 (M.D. Fla. October 18, 2011) (noting that the eight (8)

additional notices of consent already filed show that other employees desire to opt-in the

action);   *Spell v. Voyeur Dorm, LC*, Case No. 8:03-cv-1091-T-26TGW, at 3 (M.D. Fla.

August 4, 2003) ("Also informing this Court's discretionary decision to grant conditional

certification is the significant fact that since the filing of the Plaintiffs' complaint, six other

employees of the Defendants have filed consents to opt-in and join this lawsuit."), attached as

Exhibit "R"; *see also Bell v. Mynt Entertainment, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (affidavits of original plaintiffs stating that other similarly situated employees "were unhappy" and "would be interested in joining" the action provided "reasonable basis" for collective action to proceed); *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1316 (M.D. Ala. 2002) (affidavits from three individuals expressing desire to join action sufficient to warrant opt-in notice to class).

### *3. The Other Interns Are Similarly Situated*

In *Grayson v. K Mart Corp.*, 19 F. 4d 1086, 1095 (11th Cir. 1996), the Eleventh Circuit held: "the 'similarly situated' requirement of §216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *See also Hipp,* 252 F. 3d at 1219. The Eleventh Circuit also stated, "'[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members.'" *Grayson,* 79 F.3d at 1096 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.F. 392, 407 (D.N.J. 1988), *aff'd. in part and appeal dismissed in part,* 862 F.2d 439 (3d Cir. 1988), *aff'd.* 493 U.S. 165, 110 S. Ct. 482, 107 L.Ed.2d 480 (1989)). Other courts in this district have held that it can be an abuse of discretion not to certify an FLSA collective action. *See Spell*, Case No. 8:03-cv-1091-T-26TGW, at 3 (abuse of discretion not to grant conditional certification where detailed affidavits showed similarly situated individuals and multiple consents to join had been filed).

Employees are similarly situated where they are subjected to the same unlawful policy or practice. *See Brown v. Maximum Efficiency Squared, LLC*, Case No. 2:07-cv-889-MEF, 2008 U.S. Dist. LEXIS 35608, at *3-*6 (M.D. Ala. April 30, 2008); *Ohsann v. L.V.*

*Stabler Hosp.*, Case No. 2:07-cv-0875-WKW, 2008 U.S. Dist. LEXIS 47074, at *6-*7 (M.D. Ala. June 17, 2008).

      For example, in *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294 (N.D. Cal. 1991), the court held that a single decision, policy or plan was sufficient for all employees to constitute a Section 216(b) class. *Church,* 137 F.R.D. at 306. The court noted that the strict class requirements of Rule 23 were not necessary in a Section 216(b) action. *Id.* The court held that the scope of a class is governed by whether the individuals were affected by a similar pay plan, regardless of whether the individuals worked different jobs, at different locations, and reported to different supervisors as follows:

> a class claim is not defeated simply because the proposed class performed a variety of different jobs at <u>different locations,</u> <u>reported to different supervisors</u> or left employment for different reasons than the named plaintiffs. <u>What governs the</u> <u>scope of the class is whether the named plaintiffs and their</u> <u>class members were all affected by a similar plan infected by</u> <u>discrimination. The plaintiffs need not be identically situated</u> <u>to potential class members.</u>

*Id.* at 308 (emphasis added). Therefore, the fact that individuals who elect to "opt-in" to this action may have different: (i) work locations or supervisors; or (ii) number of uncompensated hours, does not in any way affect the similarity of their positions. *See id.*

      In this case, the sole position at issue is the intern position held by Wolford students working at Collier Anesthesia. As shown above, the working conditions, and pay policies and practices for the intern position are identical across the class. For instance, the opt-in Plaintiffs were subjected to the same working conditions and pay policies and practices as the named Plaintiffs. To this end, Plaintiffs filed detailed Declarations – both from the named Plaintiffs and from multiple opt-in Plaintiffs – showing the uniformity of the working

conditions and pay policies and practices affecting the intern position at Collier Anesthesia. Accordingly, Plaintiffs have met their burden in the first tier that there are additional similarly situated individuals who may join the lawsuit.

## B. Court Supervised Notice Is Appropriate

It is the responsibility of the Court to safeguard the rights of class members in collective actions. *See Hoddman-Laroche v. Sperling,* 493 U.S. 165, 171 (1989). As *Sperling* noted, the judicial oversight of the communications with opt-in class members protects against misleading communications that may influence the exercise of their rights. *See id.*

Moreover, not only does an employer's filtering of information encourage opt-ins not to pursue their claims, but it also discourages current employees from joining collective or class actions. The courts have specifically recognized the dangers of disinformation and coercion with respect to joining a class action that surrounds current employees. *See EEOC v. Morgan Stanley & Co., Inc.,* 206 F. Supp. 2d 559, 563 (S.D.N.Y. 2002) ("potential class members are at a distinct disadvantage when approached by the parties in this case"); *Burrell v Crown Cent. Petroleum,* 176 F.R.D. 239, 243 (E.D. Tex. 1997) (where alleged class action has been filed, court may limit defendant's *ex parte* contact with class that is misleading or coercive).

In *Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193 (11th Cir. 1985), the employer hatched a scheme to influence potential class members' decisions whether to participate. The Eleventh Circuit declared:

> Unsupervised, unilateral communications with the Plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damages from misstatements could well be irreparable.

*Id.*

Many of the potential opt-ins to this collective action are currently interning at Collier Anesthesia.  [Schumann ¶ 26; Abraham ¶ 25; Nachtrab ¶ 25; Vidaurri ¶ 25; Arminio ¶ 25].  Courts recognize that "[c]oercion of potential class members by the class opponent may exist if both parties are 'involved in an on-going business relationship[.]'" *Morgan Stanley,* 206 F. Supp. 2d at 562.  Further, "[c]ourts have found the danger of such coercion between employers and employees sufficient to warrant the imposition of restrictions regarding communication between defendants and potential class members." *Id.; see Kleiner,* 751 F.2d at 1202.

### C. The Content of The Proposed Notice Is Appropriate

#### 1. The Proposed Notice Adequately Advises Employees of Their Rights

In light of the interest exhibited by Plaintiffs and the fact that the legal basis for the claims are identical, Plaintiffs seek to maintain this lawsuit as a "collective action" pursuant to § 216 (b) of the FLSA and as a class action under Rule 23.  Plaintiffs therefore request that the Court certify a collective and class action consisting of all current and former students at Wolford who worked as interns (called Student Registered Nurse Anesthetists or SRNAs) at Collier Anesthesia during the three years prior to the filing of this action, and authorize Plaintiffs, through counsel, to notify the putative class members of the pendency of this action and their right to participate in this lawsuit.  A proposed Notice of Lawsuit with Opportunity to Join has been filed as an attachment to this Motion as Exhibit "S."

The notice describes the circumstances of this case adequately and fairly. It puts potential plaintiffs on notice about the claims and gives them an opportunity to participate. A

Court-approved notice is appropriate because it helps prevent one of the parties trying to put "spin" on the litigation. Similarly, the consent satisfies the requirements of the FLSA.

Courts in this district have consistently required that a FLSA opt-in notice be provided to current and former employees. *See, e.g., Dunwiddie v. Central Location Service, Ltd., Corp.,* Case No. 5:04-cv-315-Oc-10GRJ, 2006 U.S. Dist. LEXIS 22376 (M.D. Fla. Jan. 25, 2005) (Amended Report and Recommendation allowing FLSA opt-in notice to current and past employees for the three years prior to the date of the original Report and Recommendation); *Spell*, Case No. 8:03-cv-1091-T-26TGW, at 1-3 (order granting motion to provide FLSA opt-in notice to employees "who worked or currently work for the Defendants."); *see also Pendlebury v. Smellie v. Mount Sinai Hospital,* Case No. 03 Civ. 0805, 2004 U.S. Dist. LEXIS 24006, at *24 (S.D.N.Y. Nov. 29, 2004) (order allowing FLSA opt-in notice to be provided to employees "who currently or formerly worked for [defendant] who at any time since [three years prior to the filing of the lawsuit], and through the date of [the order to provide notice to potential plaintiffs].").

Under the FLSA, a putative class member is not considered a plaintiff until they file a written consent to join. *See* 29 U.S.C. § 256; *see also* 29 C.F.R. § 790.21(b). Therefore, Plaintiffs respectfully request that the Court authorize notice to current and former interns of Collier Anesthesia, PA.

### D. Expedited Discovery is Necessary

Plaintiffs have the right to discovery that seeks to identify those who may be similarly situated to them. Courts across the country have almost universally permitted discovery of the information that Plaintiffs seek in the discovery filed with this Motion as Exhibit "T."

*See Hammond v. Lowe's Home Ctrs., Inc.,* 216 F.R.D. 666, 673 (D. Kan. 2003)("Other lower courts addressing whether to permit discovery of the names and addresses of other similarly-situated employees in section 216(b) FLSA actions have almost universally permitted discovery of this information.") (collecting cases on this issue).  Other courts in the Middle District of Florida have also allowed discovery of this same information.  *See Tucker v. Labor Leasing,* 155 F.R.D. 687, 690 (M.D. Fla. 1994) (granting plaintiff's motion to compel seeking names of all employees of defendant who were due overtime compensation); *Spell* Case No. 8:03-cv-1091-T-26TGW, at 4 (same).

Therefore, Plaintiffs request that the Court order Defendants to respond to the discovery attached as Exhibit "T" on an expedited basis so that this case can proceed in an orderly manner with those other employees who wish to participate being identified early in the case so that they can be included in discovery and trial.  The discovery simply seeks to have Defendants produce in a computerized format the names, addresses, telephone numbers, and dates of employment of all potential collective action plaintiffs. This is information that is clearly discoverable in FLSA opt-in collective action litigation and will allow for the orderly notice of the other Plaintiffs.

### III. CONCLUSION

Based upon the foregoing, Plaintiffs request that the Court enter an Order: (1) authorizing this matter to proceed as a collective action; (2) approving Plaintiff's Notice to Potential Collective Action Plaintiffs; (3) requiring Defendants to produce the names, addresses, telephone numbers, and dates of employment of all potential collective action plaintiffs in a computer readable data file; (4) authorizing counsel to mail Court-approved

notice to all potential collective action plaintiffs who were employed by Defendants for the three (3) years prior to the filing of this suit with self-addressed postage paid return envelopes; and (5) permitting the potential collective action plaintiffs to opt into this lawsuit for a period of ninety (90) days from the mailing of the Court approved notice.


       s/ Bradley P. Rothman_____
Bradley P. Rothman
Florida Bar No. 0677345
WELDON & ROTHMAN, PL
7935 Airport-Pulling Road N., Suite 205
Naples, Florida 34109
Tel: (239) 262-2141
Fax: (239) 262-2342
brothman@weldonrothman.com
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of August 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to: Jeffrey D. Fridkin, Esq., Rachael S. Loukonen, Esq., Grant, Fridkin, Pearson, Athan & Crown, P.A., 5551 Ridgewood Drive, Suite 501, Naples, Florida 34108; and Tammie L. Rattray, Esq., Robert D. Hall, Jr., Esq., Bradley R. Hall, Esq., Ford & Harrison, LLP, 101 E. Kennedy Blvd., Ste. 900, Tampa, FL  33602.


s/ Bradley P. Rothman_____
Attorney