UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BILLY SCHUMANN, an individual, and
DUSTIN ABRAHAM, an individual, ON
BEHALF OF THEMSELVES AND OTHERS
SIMILARLY SITUATED,

      Plaintiffs,

v.                               Case No. 2:12-cv-00347-JES-SPC
                                      Collective Action
COLLIER ANESTHESIA, P.A., a Florida
corporation, WOLFORD COLLEGE, LLC, a
Florida limited liability company, THOMAS L.
COOK, an individual, and LYNDA M.
WATERHOUSE, an individual,

      Defendants.

_____/

**DISPOSITIVE MOTION TO DISMISS COMPLAINT AND/OR
FOR JUDGMENT ON THE PLEADINGS OF DEFENDANTS
WOLFORD COLLEGE, LLC, THOMAS L. COOK,
LYNDA M. WATERHOUSE AND COLLIER ANESTHESIA, P.A.**

    Defendants Wolford College LLC, Thomas L. Cook and Lynda M. Waterhouse,

joined by Collier Anesthesia, P.A. (collectively as "Defendants"), respectfully move to

dismiss the Complaint pursuant to Fed. R. Civ. Pro. 12(b)(1) and (6) and/or for judgment

on the pleadings pursuant to Fed. R. Civ. Pro. 12(c) and state:

    1.     As set forth in Defendants' Answer (Dkt. 30), Plaintiffs' Complaint must

be dismissed for lack of subject matter jurisdiction or for failure to state a claim upon

which relief can be granted because there is and can be absolutely no allegation that

Plaintiffs or any other nurse anesthetist student at Defendant Wolford College had any

expectation of compensation or were economically dependent on any Defendant; as such,

Plaintiffs were not employees covered by the FLSA.

2.     Defendants submit the memorandum of law below in support of their position.

WHEREFORE, Defendants respectfully move that the Complaint be dismissed with prejudice for lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted.

## MEMORANDUM OF LAW

I.     **Background**

This is a suit brought by two registered nurses who formerly were students at Defendant Wolford College studying to become Certified Registered Nurse Anesthetists ("CRNAs").  Plaintiffs' Complaint and undisputed record filings show the following:

1.     Plaintiffs were admittedly students at Wolford College enrolled in the clinical curriculum of a fully accredited Master of Science in Nurse Anesthesia program (see Plaintiffs' filings at Dkt. 28 at 3-4; Dkt. 28-3, "Wolford College has received 10 years of accreditation through 2018").[1]

2.     While students, Plaintiffs claim to have performed the work of CRNAs (Complaint ¶ 14).

3.     While students, Plaintiffs, of course, admittedly did not have a degree, nor had they passed the Board exam required to allow them to work as CRNAs (Complaint ¶ 19).

4.     Plaintiffs were provided no compensation during their education (Complaint ¶ 15, 33, 37).

---

[1]  Plaintiffs fail to mention in the Complaint the fully admitted and undisputed fact that the activities in issue were in the required clinical curriculum of an accredited Masters program.  The Court may consider in a Rule 12 motion undisputed filings of record including extrinsic documents central to Plaintiffs' claim as to which authenticity is not challenged.  *See Speaker v. U.S. HHS CDC & Prevention*, 623 F.3d 1371 (11th Cir. 2010).

5.      **Plaintiffs allege no expectation of compensation or economic dependency, because they had none**.

6.      During Plaintiffs' last 16 months of education which was a clinical experience rotating among medical facilities as Student Registered Nurse Anesthetists ("SRNA") (Dkt. 28 at 4, Dkt. 28-1), Plaintiffs allege that they were directly engaged in operations of the Collier Anesthesia, P.A. anesthesiology group ("CAPA"), scheduled based on CAPA's staffing needs, and performed productive work to CAPA's benefit (Complaint ¶¶ 23-31).

Plaintiffs fail to advise the Court that by law, they were engaging in required education under § 464.012(1)(c), *Fla. Stat.*, which provides that graduation from a Master's program is required for certification as a registered nurse anesthetist. CRNAs are included in the category Advanced Registered Nurse Practitioners ("ARNP"). *See* § 464.003(3), *Fla. Stat.* By Florida regulation, a Master's program to prepare to be an ARNP requires clinical experience. *See* § 64B9-4.003(2), F.A.C. Clinical experience is defined as actual care of consumers of health services under the supervision of doctors or certified ARNPs. *See* § 64B9-4.001(7), (13), F.A.C. Thus, the legally required clinical education for the Master's program which is mandated by the State of Florida required that Plaintiffs directly engage in patient care under the supervision of anesthesiologists and CRNAs, such as those associated with CAPA (and other anesthesiology practices).

While students are enrolled in their clinical experience, they have not graduated, they are not certified or licensed, and they are not "working" as CRNAs. By Florida law, a person may not practice as or assume the title of a CRNA unless they are licensed. *See* § 464.015(9), *Fla. Stat.* In fact, it is a felony to practice without an active license. *See*

§ 464.016(1)(1), *Fla. Stat.*  Thus, the law makes a clear distinction between the required clinical experience of students and working as a CRNA.

## II.      Grounds for Dismissal or Judgment on the Pleadings Under Rule 12(b) & (c)

The determination of whether Plaintiffs are employees of Defendants under the FLSA is a legal determination.  *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986).  To survive a motion to dismiss the "allegations must be enough to raise a right to relief above the speculative level."  *Freeman v. Key Largo Volunteer Fire & Rescue Dept.*, 2012 U.S. App. LEXIS 22392, *3 (11th Cir. Oct. 31, 2012).  The same standard applies to motions for judgment on the pleadings under Rule 12(c).  See 2 *Moore's Fed. Prac.* at 12-36 to 12-37.  The application of the economic reality test to determine whether Plaintiffs were "employees" under the FLSA is proper on a motion to dismiss.  *Freeman, supra*, at *6.  Also, there is no jurisdiction to consider the merits of Plaintiffs' claims where, as here, they are not "employees" under the statute.  *See Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236, 1244 (11th Cir. 1998) ("only individuals who receive compensation from an employer can be deemed 'employees' under the statute" (Title VII); as a result, the court held that there was no jurisdiction to assess merits).

### A.      Binding Precedent

To be covered by the FLSA,

> [Individuals] must be "employees" within the meaning of the Act.  While the statutory definition [of employee] is exceedingly broad it does have its limits.  **An individual who without promise or expectation of compensation, but solely for his personal purpose or pleasure,** worked in activities carried on by other persons either for their pleasure **or profit is outside the sweep of the Act**.

*Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 295 (1985)

(citations omitted; emphasis added).

The Supreme Court in *Alamo Foundation* cited to *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), which held that:

> Section 3 (g) of the Act defines "employ" as including "to suffer or permit to work" and § 3 (e) defines "employee" as "any individual  employed by an employer." **The definition "suffer or permit to work" was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another.  Otherwise, all students would be employees of the school or college they attended, and as such entitled to receive minimum wages.**

*Id.* at 152 (emphasis added).

In *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986), the Eleventh Circuit followed *Portland Terminal* in holding that an individual who signed checks, made deposits and did bookkeeping for a company which leased realty (*i.e.*, for profit) with no contemplation of compensation was not an FLSA employee.   The Court held:

> . . . [T]he district court correctly concluded that [the plaintiff] was not an employee of Investment, Inc.  **The evidence does not demonstrate that [the plaintiff] contemplated compensation for his acts**, *cf.*, *Walling v. Portland Terminal Co.* . . . **nor does it demonstrate as a matter of economic reality that Patel was dependent upon Investment, Inc.**, *cf.* Bartels v. Birmingham. . . .

*Id.* at 635 (emphasis added).  *Accord Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996) (volunteer who restored furniture for non-governmental entity "which resulted in substantial profits when resold" held to be volunteer and not employee; he "had neither an express nor an implied agreement for compensation with the Salvation Army and thus was not an employee"); *Crumpton v. Sunset Club Properties, LLC*, 2011 U.S. Dist. LEXIS 83987, *6 (M.D. Fla. Aug. 1, 2011) (Steele, J.) (individual is employee under the FLSA "if, as a matter of economic reality, the individual is dependent on the entity").

It is virtually axiomatic that the test of whether someone is an "employee" under the FLSA is the "economic realities" test. *Alamo Foundation*, 471 U.S. at 301. *Accord Freeman, supra; Patel*, 803 F.2d at 635. There are essentially two ways that a plaintiff can show that he was an FLSA "employee" of someone for whom he performed services. The first is to show that he had an expectation of compensation. The second is to show that, if he did not have an expectation of compensation, he was somehow otherwise economically dependent on the organization for which he performed the services. In *Alamo Foundation*, the individuals performing services for the foundation were asserted to be volunteers and were paid no salaries, but were deemed to be "employees" under the economic realities test because they were "entirely dependent upon the Foundation for long periods," and they "must have" expected to receive compensation in the form of in-kind benefits (i.e., food, shelter, clothing, transportation and medical benefits). *Alamo Foundation*, 471 U.S. at 301 304.

In *Eltman v. Columbia/HCA Healthcare Corp.*, Case No. 00-6124-CIV-ZLOCH (S.D. Fla. 2000) (attached as Ex. 1), Judge Zloch granted a similar motion to dismiss against a hospital volunteer who claimed that he performed "routine manual labor which, but for the service of [the Plaintiff] and numerous other hospital volunteers, [the Defendant] would have to pay wages" to employees to perform. Judge Zloch emphasized that the test for employment under the FLSA "is one of 'economic reality' namely, whether an individual has an expectation of compensation or whether the individual is economically dependent upon the employer." Because the plaintiff's complaint failed to

show that he engaged in the activity with an expectation of compensation or was economically dependent on defendant, the complaint was dismissed.[2]

In *Freeman, supra*, a case decided by the Eleventh Circuit Court of Appeals on October 31, 2012, the plaintiff's Second Amended Complaint (attached as Ex. 2) alleged that:

1.      The fire department was a corporation which was paid over $1 million dollars/year pursuant to contract (¶¶ 3-5).

2.      Freeman provided services to the department including (a) maintaining fire trucks, equipment, fire stations, and grounds, (b) responding to emergencies, holding the hose, entering burning buildings, suppressing fires, (c) assisting in removal of debris, and (d) training firefighters (¶ 10).

3.      Freeman had a job description (¶ 11).

4.      Freeman was trained in fire suppression by the department (¶ 12).

5.      Volunteers performed the same tasks as employees and were paid, with the pay being only $5/hour compared to employees' pay of $16-$20/hour (¶ 14).  The pay for volunteers was distributed from a budget plan of volunteer compensation of the Department approved by the District.

6.      Freeman was required to follow the command of supervisors (¶ 21).

---

[2]  Similarly, in *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996), the plaintiff-volunteer worked in a furniture restoration shop at the Salvation Army, improving the value of furniture "which resulted in substantial profits when resold." *Id.* at 1069.  He also sorted food and clothing donations.  He received food, clothing, shelter, and a small stipend.  The Ninth Circuit followed *Alamo Foundation* and *Portland Terminal* and held that the plaintiff-volunteer "had neither an express nor an implied agreement for compensation with the Salvation Army and thus was not an employee." *Id.* at 1067.

7.     The Department was required to maximize the use of volunteers in comparison to employees (¶ 13).  Freeman typically worked two 24 hour shifts per week (¶ 22).

8.     Freeman was also compensated $30 for emergency calls and $20 for meetings and could be compensated up to $1200/month (¶¶ 24-26).

9.     Freeman worked over 1500 hours/year for 3 years (¶ 27).

10.    Freeman was provided employee W-2 forms for his compensation and income and payroll taxes were withheld (¶¶ 28, 30).

11.    Freeman was subject to discipline (¶ 29).

12.    Freeman claimed that he was due the FLSA minimum wage and overtime (¶¶ 33-34).

Attached to the Second Amended Complaint was an agreement for the fire department services (Ex. 2, attached Dkt. 76-1) between the fire department and an alleged co-employer, the "District."  The agreement provided in pertinent part that volunteers were part of the Department "personnel" and were to be utilized to the maximum extent possible:

> ¶ 10  "PERSONNEL:  The DEPARTMENT shall maintain volunteer and/or paid personnel . . . . **Scheduling and assignment of personnel shall be arranged so as to utilize to the maximum extent possible volunteer personnel . . . .**"

The agreement further provided:

> ¶ 11  "The DEPARTMENT shall require that all personnel engaged in Fire & Rescue Services comply with the minimum training, education and performance requirements . . . ."

> ¶ 12  "The DEPARTMENT shall have a formal, progressive disciplinary process . . . ."

* * *

¶ 30  "The DEPARTMENT shall provide the following insurance on all volunteers of the DEPARTMENT . . . ."

* * *

"C.     Workers Compensation insurance as required by Florida Statutes Chapter 440, including minimum $500,000 Employer's Liability Coverage."

* * *

¶ 33  "The DISTRICT shall reimburse the DEPARTMENT for the volunteer personnel in accordance with an annual budget agreed upon by both parties . . . . The DEPARTMENT shall have the right to establish its own eligibility requirements for disbursement of reimbursement based on participation of DEPARTMENT activities."

Applying the "economic reality" test, the District Court dismissed the complaint against both the fire department and the District, with prejudice. *See Freeman v. Key Largo Vol. Fire & Rescue Dept.*, 841 F. Supp. 2d 1274 (S.D. Fla. Jan. 20, 2012). The Eleventh Circuit affirmed the dismissal with prejudice of the FLSA Complaint of the "volunteer" in the following comparative circumstances:

|          | Freeman | Here |
|----------|---------|------|
| 1. Pay   | Plaintiff-volunteer was paid $5/hour; maximum payment to Plaintiff-volunteer $1200/month regardless of total hours. | Plaintiff-students received **no compensation** and alleged **no expectation of pay or economic dependency** |
| 2. Hours | Plaintiff could earn up to $1200/month (240 hours/month), plaintiff's hours varied and typically he "worked" two 24 hour shifts per week; Department was required to maximize use of volunteers. | Plaintiff students allegedly "worked" 40+ hours/week, but recorded and reported those "work" hours as clinical education needed for their graduation and certification to become CRNA's (see Dkt. 45-11, Plaintiffs' sworn admissions) |

|  | Freeman | Here |
|---|---|---|
| 3. Hiring | Freeman knowingly assumed volunteer fireman status; there was no allegation of a request that he be hired as a paid employee. | Plaintiffs knowingly assumed student status in a Masters degree program and make no allegation of ever requesting or applying for employment |
| 4. Rate of Pay | Set through a plan as to the overall amount to be paid for volunteer services by the District | Defendants set no rate of pay, as there was none |
| 5. Employment Records | Provided W-2 to plaintiff | No employment application, records or W-2; no allegation that employment records were provided or maintained |

The Eleventh Circuit held that, as a threshold issue in the context of a motion to dismiss, the determination of whether an individual is an employee under the FLSA:

1.     Requires the Court to look at the "economic reality" of the circumstances surrounding the activity,

2.     Whereby the "touchstone of the economic reality test is the alleged employee's economic dependence on the employer," and

3.     "The final and determinative question must be whether . . . the personnel are so dependent upon the business with which they are connected that they came within the protection of the FLSA or are sufficiently independent to be outside its ambit."

The Eleventh Circuit held that "the economic reality is that Freeman is not an employee of the Department or the District," and affirmed dismissal with prejudice upon a motion to dismiss in favor of both alleged joint employers.  The admitted "economic reality" was that Freeman was a knowing volunteer.

Here, the "economic reality" is even more clear.  These students were registered nurses who knowingly applied for admission to Wolford College, never applied for a job, were never paid anything, make no allegation of expectation of compensation or

economic dependency, and were enrolled in a mandatory educational program which had to be completed BEFORE they could legally "work" as a CRNA. The lack of economic dependence is completely undisputed. There is no allegation anywhere in Plaintiffs' Complaint that they or any other student had any expectation of compensation, or that they were otherwise economically dependent on any organization or person mentioned in the Complaint. This is fatal, and Plaintiffs' Complaint must be dismissed.

**B.    The Students' Legally Required Clinical Experience in Masters Program of an Accredited College is Not Employment Under Judicial Precedent**

Based on their earlier arguments thus far, Plaintiffs will likely seek to inaccurately portray the situation here as an informal on-the-job internship of a private company subject to a Department of Labor (DOL) test. See DOL Operations Handbook § 10b11. The six factor DOL test is inapplicable to externships/clinical experiences in advanced college or university medically-related degree programs, is not consistent with the foregoing controlling judicial precedent, is not entitled to any deference here, and even assuming, *arguendo,* it were considered, renders no different result.

Notably, even DOL has flatly recognized that students are not employees where the situation involves (1) a college, (2) training during an advanced medically-related degree program, (3) at a medically-related site, (4) under the supervision of qualified providers, and (5) under state law and/or degree requirements, completion of such course is required prior to graduation (which may avoid or reduce post-graduation and pre-licensing internship requirements). Thus, per DOL Field Operations Handbook § 10b19, a pre-graduation medical externship in a hospital is "so predominantly for the benefit of the extern" that it is not employment because it is "a part of the educational opportunities

11

provided" and obviously provides the student "with professional experience in the furtherance of their medical education."

Pursuant to § 10b20, a pre-graduation 12 month hospital administrative residency by a student seeking a Master of Hospital Administration is not employment. This remains the case where the student "performs various tasks in the hospital," the student receives a "stipend or allowance from the hospital," and "the hospital administrator responsible for the resident is also on the college faculty."

Also, pursuant to § 10b37, a pre-graduation pharmaceutical externship as a part of a college pharmacy curriculum at pharmacy site is predominantly for the benefit of the student and is not employment. As explained by DOL, clinical externships for college pharmacy students which apply towards state licensing requirements "are in furtherance of their educational opportunities" and "predominantly for their benefit" and they are not "employees."

Similarly, DOL states that CRNA's are bona fide learned professionals. See 1999 DOL WH LEXIS 127. CRNA's meet the requirement for a "prolonged course of specialized intellectual instruction and study" to become professionals. *Id.* DOL has emphasized that:

> During their course of study, students are required to
> participate in a variety of cases and anesthetic techniques.
> Graduates of a program must then pass a national
> certification exam to become certified as a CRNA.

Clearly, the pre-graduation clinical activities of the student are part of a prolonged course of specialized professional instruction and by definition are not employment.

Plaintiffs have cited to *Solis v. Laurelbrook Sanitarium & School*, 642 F.3d 518 (6th Cir. 2011), to claim that their lack of expectation of compensation is not controlling

but *Solis* is of no assistance and actually defeats their claim.  Indeed, in *Solis*, the court

found that the DOL six factor test was a "poor method" for determining employee status

in an educational setting and instead applied a primary benefit test.  There, the school was

a high school with a nursing home sanitarium for practical training.  There, the school

had a vocational course of Certified Nurse Assistant (CNA) approved by the State.  Upon

becoming certified, the student could then be assigned to the nursing home sanitarium to

assist patients.  Thus, the student service in the sanitarium in issue was not to gain

certification but rather was post-certification and during high school (unlike the legally

required Masters advanced degree experience here to obtain certification).  Although the

school received compensation from patients and from sales from high school student

services, the court found that the students were provided hands-on training (providing

intangible benefit but no specific results, as contrasted with CRNA certification here) and

that the educational program was sound and accredited.  Accordingly, the court ruled

against DOL and held that the students were the primary beneficiaries and not employees.

Notably, DOL has agreed that college pre-graduation externships in medically-related

fields are not employment.  It is completely undisputed here that the clinical experience is

part of a pre-certification, legally-required and accredited Masters program allowing

Plaintiffs to be certified for a CRNA career averaging over $160,000/year, so that it is

clear that the students are not employees.

Thus, the vocational trainee factors in § 10b11 of the DOL handbook are clearly

inapplicable.  First, unlike the six factor DOL vocational trainee test, the issue here is not

whether the training "is similar to that which would be given in a vocational school" –

here, the training is for a profession in an admittedly legally required and accredited

college Masters program (not in some informal program only similar to a vocational school).[3]  Second, the clinical experience here is legally required to graduate and become certified as CRNA to the obvious great and predominant benefit of the student who it is undisputed is seeking that very high paying career of over $160,000/year (see Dkt. 45-7). Third, there is clearly no expectation of compensation or economic dependency, which under *Alamo, Patel* and *Freeman* is the controlling test.  Fourth, the Plaintiffs' clinical experiences are legally required professional training in giving patient care under the observation of anesthesiologists and CRNA's in order to graduate and become licensed; in applying the "economic reality" test, Judge Zloch in *Eltman* (attached as Ex. 1) found legally unpersuasive and rejected a DOL interpretation which suggested that hospital volunteers with no expectation of compensation or economic dependency would be transformed into "employees" if they performed duties otherwise performed by paid employees because such interpretation "is contrary to judicial authority, lacks statutory foundation, and has been implicitly rejected by the Supreme Court."[4]  Fifth, the economic reality is that the professional training is legally required Masters level education and so predominantly for the benefit of the student seeking $160,000+/year professional position

---

[3]   § 10b11 refers to vocational-type training by an employer of trainees/students and has nothing whatsoever to do with an advanced Masters degree program of an accredited college with legally required clinical training for graduation and professional certification/licensing.  Nor does § 10b14, which does not even reference a college, have any relation to an advanced Masters degree program for registered nurses to be certified under Florida law (§ 464.012, *Fla. Stat.*) for CRNA positions averaging over $160,000.  Rather, it relates to paramedical occupations.  Paramedics in Florida must have a high school diploma and a certification course.  § 6J-1.009 F.A.C.  Similarly, x-ray technicians must have a high school diploma and a course.  LPN's and RN's must have a high school diploma and graduation from an approved program. § 464.008, *Fla. Stat.*  In contrast, CRNA's which are considered learned professionals under the FLSA, in Florida, must graduate from an accredited Masters program to become a CRNA.  § 464.012(1)(c).
[4]   Similarly, in *Freeman* where, despite the admitted fact that volunteers were maximized and displaced regular employees, he was not an FLSA "employee" under the economic realities test.  Plaintiffs essentially contend, "In training to be a CRNA, I performed a duty of a CRNA (as was legally required clinical experience to graduate) so now I am transformed into an employee entitled to compensation for my training."  Their argument is just flat absurd because they were required by law to have clinical experience as students regardless of alleged displacement.

that DOL flatly concedes no employment, as shown above.[5]  Finally, there is no

allegation, argument or even suggestion here that students were entitled to a job with any

Defendant at the conclusion of their education.

Plaintiffs have also indicated reliance on *Marshall v. Baptist Hospital, Inc.*, 473

F. Supp. 465 (M.D. Tenn. 1979), *rev'd* 668 F.2d 234 (6th Cir. 1981).  Not only is reliance

on a reversed Tennessee district decision which is inconsistent with Eleventh Circuit

precedent completely unwarranted, but what was in issue in the overturned District Court

decision there is easily distinguishable because it was a tuition-less, unaccredited hospital

technologists training program and not a legally required, accredited, educationally sound

college Masters program.  There, what was in issue was a 2 year program of a university

hospital to become an x-ray technologist which included training in a hospital, unlike

here, where the program is a Masters program of an accredited college for registered

nurses which is legally required to become a CRNA.  There, the trainees were not

charged tuition, unlike here, where the Masters program is so beneficial that the

registered nurses pay over $50,000 in tuition in pursuit of CRNA jobs paying over

$160,000/year.  There, the trainees were paid a monthly stipend and provided free

insurance and laundry service by the hospital, unlike here, where there is admittedly no

form of compensation or expectation of compensation.  (See Complaint ¶ 33;

"Plaintiffs . . . did not receive compensation.")  Importantly, there, a joint review

committee on accreditation did not approve sponsorship of the program and placed it on

---

[5]  Although the fire department in *Freeman* and the hospital in *Eltman* received the direct benefit of the
services of the volunteer which were not legally required, the real issue was the economic dependency of
the volunteer and the volunteer was not an employee as matter of economic reality.  *Eltman* and *Freeman*
both granted motions to dismiss.  Here, the training is legally required to be in actual patient care for the
learning advantage of the student and training those just learning, of course, impedes operations.  Plaintiffs
repeatedly admit as much in their own undisputed evaluation statements (Dkt. 45-1) admitting their lack of
knowledge, anxiety, need for improvement, and learning.

probation for reasons that included that trainees were withheld from class attendance to provide x-ray services, unlike here, where the Masters program is fully accredited (Dkt. 28-3, Dkt. 45-5). There, the ultimate key point was that the program was invalid as an educational program, including lack of records of clinical experience and lack of medical facility rotation, *Id.* at 474, with the court concluding that "[h]ad the training program been found to be educationally sound," it might have nevertheless found the trainee to be the primary beneficiary and not an employee. *Id.* at 476-477. Here, the program is educationally sound and accredited. Plaintiffs do not and cannot allege otherwise. This is particularly so because in Plaintiffs' own sworn attestations to the National Board of Certification and Recertification for Nurse Anesthetists submitted in order to become certified as a CRNA (see Dkt. 45-11), Plaintiffs swore under oath to the national certifying Board that the clinical activity in issue here was their "clinical experience in the above-named accredited nurse anesthesia program."

Accordingly, Plaintiffs' Complaint shows that the Plaintiffs were student nurse anesthetists who had no expectation of compensation, and no economic dependency on Defendants, and were not employees and thus must be dismissed for lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted.

Respectfully submitted,

By: s/ Tammie L. Rattray
    Tammie L. Rattray
    Florida Bar No. 0128619
    trattray@fordharrison.com

Joined by:
    Robert D. Hall, Jr.
    Florida Bar No. 186760
Jeffrey D. Fridkin
    rhall@fordharrison.com
Florida Bar No. 0490245
    Bradley R. Hall
jfridkin@gfpac.com
    Florida Bar No. 0026172
GRANT FRIDKIN PEARSON ATHAN &
    brhall@fordharrison.com
CROWN, P.A.
    FORD & HARRISON LLP
5551 Ridgewood Dr., Suite 501
    101 E. Kennedy Boulevard, Suite 900
Naples, Florida  34108
    Tampa, Florida 33602
Telephone:  (239) 514-1000
    Telephone:  (813) 261-7800
Facsimile:  (239) 514-0377
    Facsimile:   (813) 261-7899

Attorneys for Defendant Collier
    Attorneys for the Defendants Wolford
Anesthesia, P.A.
    College LLC, Thomas L. Cook and
    Lynda M. Waterhouse

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on December 12, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to:

Ryan D. Barack
Kwall, Showers & Barack, P.A.
133 North Fort Harrison Avenue
Clearwater, Florida 33755

Bradley P. Rothman
Weldon & Rothman, Pl
7935 Airport-Pulling Road N., Suite 205
Naples, Florida  34109

s/ Tammie L. Rattray
Attorney

TAMPA:330831.1