```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

BILLY SCHUMANN, DUSTIN ABRAHAM, on behalf of themselves and others similarly situated, LAUREN TIDWELL, JEANIE HAKENEWERT, STEPHANIE ALANA MARIE BENJAMIN, CHRISTOPHER M. BOURN, DEREK WHITE, LAHOMA J. NACHTRAB, RICHARDO ROSADO, LANNETTE GIBSON, DANIEL PENTON, DENISE ARMINIO, OFELIA BIAGAN, SHEILA SMITH, CELINE VIDAURRI, CHRISTINA VINAS, RICARDO ROSADO, PATRICK C. HARRELL, RACHEL GOODE, JAMIESON WISHMAN, PAUL CALOIAN, STEVEN TODD LITTLE, JESSICA LINCOLN, and CHRISTOPHER JALACKI,

   Plaintiffs,

v.           Case No: 2:12-cv-347-FtM-29CM

COLLIER ANESTHESIA, P.A., a Florida corporation, WOLFORD COLLEGE, LLC, a Florida limited liability company, THOMAS L. COOK, an individual, and LYNDA M. WATERHOUSE, an individual,

   Defendants.

_____

## **OPINION AND ORDER**

   This matter comes before the Court on (i) Plaintiffs' Motion in Limine (Doc. #280) filed on March 8, 2017, to which Defendants filed Responses in Opposition (Docs. ## 294, 297) on March 22, 2017, and (ii) Defendants' joint Motion in Limine (Doc. #282) filed on March 8, 2017, to which Plaintiffs filed a Response in

Opposition (Doc. #296) on March 22, 2017.  Each motion is granted in part and denied in part, as set forth below.  These rulings shall govern the trial, but any party may seek reconsideration at trial in light of the evidence actually presented and must make contemporaneous objections when evidence is elicited in order to preserve an objection.

**A. Plaintiffs' Motion in Limine**

    **1. Requests One and Two – Criminalization and Prohibition of CRNA Employment While Students**

Plaintiffs move to exclude presentation of testimony and evidence that 1) Fla. Stat. § 464.016 makes it a felony to perform CRNA duties without a license and 2) the accreditation authorities and Wolford College forbid SRNAs from employment as nurse anesthetists by title or function.  Plaintiffs specifically seek to prevent the jury from being instructed that illegality is an affirmative defense barring Plaintiffs from recovering damages, even if they are found to have been Defendants' "employees."

Although evidence regarding criminalization or prohibition of employment as a CRNA is not relevant to Plaintiffs' employment status under the FLSA, such evidence may have probative value on the question of Defendants' "willfulness" and "good faith," and thereby affect the statute of limitations and the availability of liquidated damages.  Accordingly, the Court **denies** Plaintiffs' request to entirely exclude this evidence.

The Court does, however, find improper an affirmative defense that is based on the "illegality" or impropriety of Plaintiffs'

status as "employees."  Defendants argue that "if an FLSA claimant actively and voluntarily participates in illegal activity that is the subject of the wages claimed in an FLSA suit, the FLSA is not available to reward him for that illegal activity."  (Doc. #294, p. 3 (citing Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1306 (11th Cir. 2013).)  But this "in pari delicto defense may be applied to bar recovery under a federal statute *only where* (1) the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, *and* (2) preclusion of the suit would not substantially interfere with the statute's policy goals."  Lamonica, 711 F.3d at 1308 (emphases added) (affirming district court's denial of defendants' motion for judgment as a matter of law since plaintiffs – one of whom was an undocumented alien and had used a fake Social Security number, and both of whom had falsely reported their income to the FLSA – had *not* "cooperated with [defendants] in violating the FLSA's" overtime wage provisions).

Such is also the case here.  Even assuming the in pari delicto defense "may ever be applied to bar recovery under [the FLSA]" – a question Lamonica left open – nothing in the record indicates that Plaintiffs "cooperated" with Defendants to violate the FLSA (if indeed the FLSA has been violated).  Id.  To the contrary, the very premise of Plaintiffs' lawsuit is that Defendants elevated their own business interests over the students' educational wants and needs.  Moreover, as this Court has previously stated, "in

determining whether a student intern was an 'employee,' the Glatt factors and Schumann focus on the putative *employer's* conduct. In other words, a student intern is deemed an 'employee' because he was treated as such." (Doc. #269, p. 15.) Thus, Defendants are not entitled to a jury instruction stating that Florida's criminalization of unlicensed CRNA employment bars Plaintiffs from recovering under the FLSA.[1]

### 2. Request Three – Average SRNA Clinical Hours

Plaintiffs also contend that the Court should exclude evidence and testimony that compares the total number of clinical internship hours Plaintiffs worked with national SRNA averages. In support of this request, Plaintiffs cite to this Court's statement in the Opinion and Order denying summary judgment that "[c]omparing Plaintiffs' total hours to national averages is not especially helpful" in evaluating the fifth Glatt factor. (Doc. #269, p. 31.) While true, it does not mean national averages are entirely irrelevant to the Glatt analysis. Plaintiffs' request to exclude this evidence is **denied**.

---

[1] Use of Fla. Stat. § 464.016 as a shield against FLSA liability in this manner is also likely impermissible. See Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, (1985) (holding that city transit authority was not immune from complying with FLSA and thus could not set its own minimum wage and overtime rates lower than what FLSA requires); cf. Moran v. City of Lakeland, 694 So. 2d 886, 887 (Fla. 2d DCA 1997) (Florida statute that limited recovery of attorneys' fees was preempted by more generous provisions of Civil Rights Attorney's Fees Awards Act).

### 3. Requests Four, Five, Seven – Academic & Financial Forms

Plaintiffs seek to exclude testimony and evidence regarding three categories of documents: Plaintiffs' student loan, financial aid, and tuition forms; their Wolford applications and admission documents; and their tax returns. According to Plaintiffs, presentation of such testimony will "unnecessarily prolong the trial and result in cumulative evidence," since Plaintiffs have already stipulated that they were not promised compensation for their internships or future employment. (Doc. #280, p. 8.) Defendants respond that this evidence is relevant to several considerations raised in Schumann, regardless of Plaintiffs' stipulations. The Court cannot say at this juncture that the evidence lacks any probative value or that Defendants' anticipated use of the evidence will unduly prejudice Plaintiffs. [2] Accordingly, Plaintiffs' request to exclude these documents and related testimony is **denied**.

### 4. Request Six - Plaintiffs' Post-Graduation CRNA Wages

Defendants have indicated they intend to present evidence regarding Plaintiffs' six-figure CRNA wages. According to Defendants, "the massive improvement in earnings power these SRNAs were able to achieve as a direct result of their participation in

---

[2] Use of this evidence is, however, subject to the Court's above ruling as to the unavailability of an illegality/in pari delicto affirmative defense. Defendants may not, for example, use these documents to argue that Plaintiffs are estopped from claiming they were "employees" because they told the government (and Wolford) that they were applying for admission as "students."

the Wolford College accredited masters' degree program" speaks to the program's "benefits to the students" - the main focus under Schumann. (Doc. #294, pp. 14-15.) Plaintiffs contend that testimony and evidence regarding their post-graduation wages does not meet Rule 402's relevancy requirement for admissibility.

The Court agrees with Plaintiff; the increased earning power of a CRNA does not shed light on "whether the manner in which the employer implement[ed] the [specific SRNA] internship program [at issue took] unfair advantage of or [was] otherwise abusive towards [the SRNAs]." Schumann, 803 F.3d at 1203. Nor is there any indication that Plaintiffs make more (or less) money than other SRNAs *because* they graduated from Wolford, as might speak to the benefit (or lack thereof) of the clinical internship at issue. In other words, post-graduate earnings are simply not probative of whether Plaintiffs were "students" or "employees" during their clinical internships. Accordingly, Plaintiffs' request to exclude evidence and testimony on their CRNA wages is **granted**.

5. **Request Eight – "New" Witnesses and Documents**

According to Plaintiffs, between February 24 and March 6, 2017 (years past the discovery deadline), Defendants produced approximately 1,000 pages of new documents (mostly student records and financial documents), which Plaintiffs expect Defendants to use at trial. Defendants have also indicated they are likely to call at least two trial witnesses who were not listed in their Rule 37 disclosures.

Citing unfair prejudice, Plaintiffs request an order preventing use of these documents at, and excluding the new witnesses from, trial. Defendants oppose the request, since the witnesses were "otherwise known" to Plaintiffs, and since the documents had either not been requested in discovery or not been authorized for release by Plaintiffs, as required under law.

Because it does not appear that the newly-added witnesses are "surprise witnesses," and because Plaintiffs also intend to present witnesses at trial who have not been deposed (Doc. #283, p. 9), the Court **denies** Plaintiffs' request to exclude them from trial. See Chadwick v. Bank of Am., N.A., 616 F. App'x 944, 948 (11th Cir. 2015). The Court also **denies** as premature the motion as to the newly-produced documents, since it is not clear which documents Defendants will present at trial and whether they should have been produced earlier. Counsel may, of course, object to specific documents at trial.

**6. Request Nine – Wolford's History & SRNA placement fees**

Plaintiffs' last request is to exclude "irrelevant" evidence and testimony as to the circumstances surrounding the founding of Wolford College as a non-profit school and regarding Collier Anesthesia's placement-fee arrangement with another school's SRNA program. The Court disagrees that this information lacks relevancy. Plaintiffs have consistently argued that Wolford's current status as a for-profit institution and Collier's payment of SRNA placement fees are relevant to the claim that Plaintiffs

were "employees." Evidence regarding Wolford's history, including why the school was founded and the placement fees Collier pays to other schools, is relevant to these issues, and the probative value of that evidence does not appear outweighed by the potential for confusion or prejudice. Accordingly, this request is **denied**.

**B. Defendants' Motion in Limine**

**1. Request One – SRNA National Certification Exam (NCE) Passage Rates**

Defendants seek to exclude from trial "evidence of 2011 NCE first time pass rates, any comparison to 2011 first time pass rates of Wolford College 2011 graduates, or any argument using any prior single year's first time pass rates as a basis of contending deficiencies in Wolford College's program." (Doc. #282, p. 5.) According to Defendants, this evidence is more likely to confuse the jury than to provide probative insight into any relevant issue and, in any event, requires expert testimony. Plaintiffs counter that evidence regarding exam performance may assist the trier of fact in assessing whether Plaintiffs were employees or students and contend that jurors are capable of reviewing straightforward published data and drawing the inferences they deem appropriate, without the assistance of an expert.

In moving for summary judgment, Defendants argued that "the training here prepared [Plaintiffs] to qualify for, sit for, and pass the NBCRNA exam *on their first try*, except Rosado passed on his second try." (Doc. #249 (emphasis added).) Now, however, Defendants want to exclude the same type of evidence they

previously introduced to support their position that Plaintiffs were not "employees." Defendants' in limine request is **denied**. As the Court observed in denying summary judgment, data regarding Wolford students' NCE passage rates and the national passage rates for all SRNAs (and the inference, if any, to be drawn therefrom) is merely one fact the jury may choose to consider when assessing whether Defendants implemented the SRNA internship program in a manner that elevated their business interests over the students' education. Defendants may, however, raise objections at trial to the specific way in which exam data is presented.

2. **Request Two – Collier Anesthesia CRNAs' Wages**

Defendants request to exclude attorney argument regarding Plaintiffs' Trial Exhibit 52, which contains calculations of the total compensation paid to Collier CRNAs and physicians for the relevant timeframe in this case - June 1, 2009 through June 30, 2012. According to Defendants, although this document "is identical to Exhibit 2 to the deposition of . . . [Defendant] Lynda Waterhouse," Plaintiffs "have misused this exhibit in the past" to make their own calculations and advance "improper" argument regarding Collier's cost-saving utilization of SRNAs. (Doc. #282, pp. 5-7.) Plaintiffs respond that the exhibit is binding on Defendants and contains "self-explanatory, straight-forward" personnel and payroll data, which the jury is capable of evaluating, and from which the jury may draw its own conclusions. (Doc. #296, p. 4.) The Court finds it premature to preclude

opposing argument on a document that *Defendants* created, based solely on Defendants' expectation of what that argument will be. Defendants may raise specific objections at trial, as appropriate.

    3. **Requests Three, Four, Five, Six – Barbara Rose, Dr. Michael Barile, CRNA Sherry Kutz, and 2:1 Supervision**

Defendants seek to limit or exclude the testimony of Barbara Rose (a former scheduler for Collier Anesthesia), Dr. Michael Barile (a former Collier physician and shareholder), and CRNA Sherry Kutz (a former Collier CRNA), primarily because Defendants expect each will improperly testify regarding Collier's use of the financially-advantageous 2:1 SRNA-to-CRNA supervisory ratio (the Ratio). Defendants also believe each lacks personal knowledge of facts relevant to assessing whether Plaintiffs were "employees" under the FLSA. Defendants further object to the testimony of Dr. Barile on the grounds that his employment with Collier began shortly after this lawsuit was filed; he spent the majority of his time at medical facilities other than those at issue here; and his assertion that Plaintiffs worked "grossly excessive hours" is conclusory and lacks adequate foundation. On a broader level, Defendants also seek to disallow essentially all testimony regarding Collier's use of the Ratio.

These requests are __denied__.[3] As this Court pointed out in denying summary judgment, although "it is not appropriate to view use of this ratio as evidence of *displacement*," Schumann does not

---

[3] Again, Defendants may object to specific aspects of witness testimony at trial.

- 10 -

appear to preclude "consideration of whether the manner in which Defendants did so short-changed Plaintiffs' clinical education," such as by removing upperclassmen SRNAs from specialty rotations and assigning them to more routine cases to suit Collier's staffing needs. (Doc. #269, p. 22, n.17.) There is nothing in the record indicating that these witnesses possess no admissible testimony on that question.[4] Moreover, as to Dr. Barile, the fact that he began his employment with Collier shortly after this lawsuit was filed does not compel a finding that he lacks personal knowledge of relevant facts regarding Collier's implementation of the SRNA clinical internship program from which some Plaintiffs had just graduated. Peeler v. KVH Indus., Inc., No. 8:12-CV-1584-T-33MAP, 2014 WL 117101, at *13 (M.D. Fla. Jan. 13, 2014) (denying a motion to exclude a document that fell "outside the relevant time period" at trial, since the document "nonetheless [bore] on the parties' respective positions").

  4. **Request Seven – "Medical Resident" Emails**

Defendants seek to exclude Plaintiffs' Trial Exhibits 1 and 48, which are emails in which Dr. Cook and another Collier anesthesiologist, Dr. John Nolan, refer to Collier SRNAs as

---

[4] Each of these witnesses may also have personal knowledge regarding whether Collier SRNAs "regularly work[ed] clinical shifts of ten or more hours or logg[ed] more than fifty clinical hours per week," i.e., whether they were required to work "grossly excessive hours." (Doc. #269, p. 31.) Regarding Ms. Rose, the Court has already found that her testimony about scheduling to implement the Ratio is relevant to the separate question of whether Dr. Cook and Ms. Waterhouse can be held individually liable as Plaintiffs' "employers." (Doc. #269, p. 14.)

"medical residents."  According to Defendants, these statements must be confined to the specific insurance-reimbursement context in which they were made, and thus Plaintiffs' use of these emails will unduly prejudice Defendants.  However, the Court has already deemed this evidence relevant, as least as to the issues of willfulness and good faith.  (Doc. #269, p. 41.)  It is for the fact-finder – in this case, the jury – to evaluate the testimony and exhibits and determine what significance, if any, to ascribe thereto under the FLSA.  Defendants' request is **denied**.

5. **Request Eight – Verbal and Physical Abuse**

Defendants move in limine to prevent evidence and testimony that certain plaintiffs were verbally or physically abused by Collier anesthesiologists.  This Court has twice rejected Plaintiffs' argument that such evidence is relevant to whether Plaintiffs were Defendants' "employees."  (See Doc. #269, p. 17 n.20 ("Swearing, name-calling, and inappropriate physical contact are not routine or accepted characteristics of a workplace, let alone 'any interaction between human beings.'" (quoting Doc. #173-4, p. 20)).)  Plaintiffs acknowledge these rulings but observe that Defendants have listed student exit interviews as potential trial exhibits and argue that Defendants "should not be allowed to pick and choose portions of these exit interviews . . . . to paint a different picture of the students' experience with Defendants" than that portrayed by the entirety of the interviews.  (Doc. #296, pp. 19, 20.)  If Defendants "open the door" by eliciting

testimony on favorable statements from the interviews, "Plaintiffs should be allowed to show evidence of the true environment, including the verbal and physical abuse." (Id. p. 19.)

Defendants' request to exclude evidence and testimony on alleged instances of verbal and physical abuse of SRNAs is **granted**. However, if Defendants use Plaintiffs' exit interviews to convey to the jury that Plaintiffs recounted only positive experiences during their internships, this may entitle Plaintiffs to "rebut" that testimony with other statements from the interviews about abusive incidents. To the extent Plaintiffs believe this situation has occurred, counsel shall bring it to the Court's attention via sidebar, prior to introducing any rebuttal evidence or testimony.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiffs' Motion in Limine (Doc. #280) is **granted in part and denied in part**, as set forth herein.

2. Defendants' Motion in Limine (Doc. #282) is **granted in part and denied in part**, as set forth herein.

**DONE and ORDERED** at Fort Myers, Florida, this 12th day of April, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record