UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BILLY SCHUMANN, DUSTIN ABRAHAM, on behalf of themselves and others similarly situated, LAUREN TIDWELL, JEANIE HAKENEWERT, STEPHANIE ALANA MARIE BENJAMIN, CHRISTOPHER M. BOURN, DEREK WHITE, LAHOMA J. NACHTRAB, RICHARDO ROSADO, LANNETTE GIBSON, DANIEL PENTON, DENISE ARMINIO, OFELIA BIAGAN, SHEILA SMITH, CELINE VIDAURRI, CHRISTINA VINAS, RICARDO ROSADO, PATRICK C. HARRELL, RACHEL GOODE, JAMIESON WISHMAN, PAUL CALOIAN, STEVEN TODD LITTLE, JESSICA LINCOLN, and CHRISTOPHER JALACKI,

    Plaintiffs,

v.                        Case No: 2:12-cv-347-FtM-29CM

COLLIER ANESTHESIA, P.A., a Florida corporation, WOLFORD COLLEGE, LLC, a Florida limited liability company, THOMAS L. COOK, an individual, and LYNDA M. WATERHOUSE, an individual,

    Defendants.

_____

**OPINION AND ORDER**

    This matter comes before the Court on Defendants' Motion for Decertification of Collective Action (Doc. #176) filed on February 28, 2014. Plaintiffs' Response (Doc. #197) was filed on March 28, 2014. The Court heard oral argument on April 6, 2017.

**I.**

Plaintiffs are a group of former student registered nurse anesthetists (SRNAs) who enrolled in Defendant Wolford College, LLC's (Wolford) 28-month nurse anesthesia master's program seeking to become Certified Registered Nurse Anesthetists (CRNAs). They now seek to recover unpaid minimum wage and overtime compensation under the Fair Labor Standards Act (FLSA) on the ground that they functioned as "employees" while interning at certain clinical sites. On February 21, 2013 the Court entered an Order (Doc. #91) conditionally certifying a collective action, and, in due course, twenty-three additional plaintiffs joined the two original plaintiffs. Defendants moved to decertify the action, but the Court granted summary judgment in Defendants' favor prior to ruling on the motion. The Eleventh Circuit subsequently vacated the summary judgment and remanded the case. Schumann v. Collier Anesthesia, P.A., 803 F.3d 1199 (11th Cir. 2015). Supplemental summary judgment relief has been denied. (Doc. #269.)

As before, Defendants seek decertification of this FLSA collective action on the ground that the claims of the twenty-five plaintiffs are not substantially similar, as would justify class treatment; that Defendants have different "defenses" as to each, including witness credibility and statute of limitations; and that procedural and fairness concerns are not present here, where the class is not particularly large. Defendants would instead have the Court conduct one trial with the two named plaintiffs, and

then twenty-three separate trials for the opt-ins, in order to determine whether each individual's story compels a finding that he or she was an "employee" during some or all of the SRNA internship program. Plaintiffs respond that the student/employee inquiry before the Court focuses on the internship program as a whole, not on each individual's experience, and that Plaintiffs' experiences are sufficiently similar to justify collective treatment. For the reasons stated below, the Court finds decertification of this collective action unwarranted.

## II.

The FLSA authorizes "similarly situated" employees to maintain a collective action against one or more employers accused of violating the statute's wage provisions. 29 U.S.C. § 216(b). Certification of an FLSA collective action is typically a two-stage process. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008) ("[W]e have sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase."); see also Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001). The focus at each stage is on whether the proposed group of plaintiffs contains individuals who are "similarly situated." While the Eleventh Circuit has "refused to draw bright lines in defining similarly," it has observed that "as more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated."

Morgan, 551 F.3d at 1261 (citing Anderson v. Cagle's, 488 F.3d 945, 953 (11th Cir. 2007)).

"The first step of whether a collective action should be certified is the notice stage," id. at 1260, also known as the "conditional certification" stage. Id. at 1261. The purpose of this stage is to determine whether there exists a group of other similarly situated employees who should be notified of the action and provided the opportunity to join. Id. at 1260. The required showing of "similarity" at this stage is "not particularly stringent," id. at 1261, and "is based primarily on pleadings and affidavits." Anderson, 488 F.3d at 953. Once the case is conditionally certified, notice is provided to the proposed group of employees, who must affirmatively opt-in to join the suit. Morgan, 551 F.3d at 1259; Anderson, 488 F.3d at 950.

"The second stage is triggered by an employer's motion for decertification." Morgan, 551 F.3d at 1261 (citing Anderson, 488 F.3d at 953). When an employer moves to decertify a collective action, the Court must "make[] a factual determination" as to whether the other class members are, in fact, similarly situated. Hipp, 252 F.3d at 1218. At this point – usually near or after the close of discovery - "the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity. [As such,] [t]his second stage is less lenient, and the plaintiff bears a heavier burden." Morgan, 551 F.3d at 1261.

In determining whether the named plaintiffs and the opt-ins are indeed similarly situated, the Court assesses various factors, including: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]" Morgan, 551 F.3d at 1261. Moreover, while the class members need not "'hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions' and encompass the defenses to some extent." Id. at 1261-62 (quoting Anderson, 488 F.3d at 953). Ultimately whether to decertify a collective action "rests largely within the district court's discretion." Id. at 1261 (quoting Anderson, 488 F.3d at 953).

## III.

At the April 6 hearing, counsel for defendant Collier Anesthesia rested the argument for decertification largely on the novelty of this "student case"[1]; unlike other key FLSA cases in which decertification has been at issue, Plaintiffs' case involves the threshold question of whether the FLSA even applies, i.e., whether Plaintiffs were Defendants' "employees." Counsel argued further that it is not possible to collectively analyze the students' internships, since their experiences were not

---

[1] The Court focuses on counsels' arguments at the hearing, as the briefing was submitted more than three years ago - well before the Eleventh Circuit issued the Schumann decision.

"substantially similar": they were members of different classes; some graduated and others did not; they complained about and enjoyed different aspects of the program; they interned at different facilities; they handled a different number of cases over a different number of total hours, etc.  Indeed, the only "commonality" all plaintiffs have – according to Defendants - is that they enrolled in Wolford College's SRNA master's program and were not paid while students.

The case law does not support Defendants' positions.  To the contrary, Morgan leaves clear that the fact of distinct "workplace" experiences neither prevents a class-wide determination on whether the FLSA's wage requirements apply nor compels decertification.  Morgan involved a group of 1,424 Family Dollar store managers seeking to recover unpaid overtime wages, but all of whom Family Dollar claimed fell within the FLSA's "executive exemption," excluding them from the statute's wage protections.  Not only did the Eleventh Circuit affirm the district court's denial of Family Dollar's motion to decertify the class for lack of substantial similarity, 551 F.3d at 1265, it also affirmed the jury's verdict that the class of managers was not subject to the exemption, over Family Dollar's "argument that the executive exemption defense is so individualized that the testifying Plaintiffs did not fairly

represent the non-testifying Plaintiffs."² Id. at 1280. Morgan thus stands for the proposition that a collective action may be appropriate even where the fact-finder has to determine whether the FLSA applies to a large group of similarly-situated individuals.³ See id. at 1263.

What is more, any lingering doubt as to whether the threshold question of a student intern's employment status under the FLSA forecloses collective treatment was dispelled by the amended version of Glatt, in which the Second Circuit stated that "a court may elect in certain cases, **including cases that can proceed as collective actions**, to consider evidence about an internship program as a whole rather than the experience of a specific intern." Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 537 (2d Cir. 2016) (emphasis added).⁴ Indeed, the undersigned has already held that Plaintiffs' case is one in which it is appropriate to do so, in light of "the **systemic nature** of the allegations." (Doc. #269, p. 23 n.18 (emphasis added).)

---

² Whether the FLSA's executive exemption defense applied was a class-wide decision made based on the "representative testimony" of seven plaintiffs and "a volume of good old-fashioned direct evidence," including corporate manuals, 39 other witnesses, charts summarizing wages and hours, and emails. Morgan, 551 F.3d at 1277.

³ "We reject Family Dollar's argument that the executive exemption defense is so individualized that the testifying Plaintiffs did not fairly represent the non-testifying Plaintiffs. For the same reasons that the court did not err in determining that the Plaintiffs were similarly situated enough to maintain a collective action, it did not err in determining that the Plaintiffs were similarly situated enough to testify as representatives of one another." Id. at 1280.

⁴ Among other revisions, the amended version of Glatt replaces several references to "the intern" with the words "the internship."

Not only is decertification not compelled by the novelty of this case, it is not warranted on the facts. While true that Plaintiffs have their differences, they are not, on the whole, "legally significant differences." Morgan, 551 F.3d at 1261. To the contrary, they are relatively de minimis matters when compared to the key factual threads that weave consistently through the stories of those plaintiffs who were deposed, and which speak to the Glatt factors.[5] Plaintiffs claim they often worked fifty or more hours per week ("grossly excessive hours"), and they contend they were told that the purpose of Medtrax/Empower was to accurately record the cases worked to ensure graduation requirements were met, not to accurately track every hour worked.[6] All plaintiffs experienced being scheduled on weekends and holidays ("days school was not in session"). Each perceived crucial deficiencies in their clinical training, resulting from – in their view - Defendants' desire to save money on paid employees:

---

[5] For example, the Court fails to see how the fact that three of the opt-in plaintiffs did not complete the program impacts the analysis of whether, *while* interns, Plaintiffs were "employees" or "students."

[6] At the hearing, counsel for Defendants argued that each plaintiff needs to be questioned on the accuracy of his or her time entries, since someone who believes he correctly entered his time cannot testify for someone who does not. As the Court has already discussed in its Order denying Plaintiffs' Motion for Representative Testimony, the number of plaintiffs who take the stand and the subject of their testimony is a sufficiency-of-the-evidence issue for the jury, assuming the case survives a Rule 50 motion - "not a matter for the Court's concern." (Doc. #314, p. 2.) So too is witness credibility an issue for the jury, and not one that supports decertification of this action.

some felt ill-prepared to handle certain cases upon graduating;[7] others recounted instances in which they were moved off specialty rotations as upperclassmen SRNAs and reassigned to more routine cases; and still others spoke of the negative impact excessive clinical hours had on their academic performance. (Doc. #269, pp. 21-24.)

The testimony was not just one-sided. Similarities also support Defendants' contention that Plaintiffs were students, not employees. Plaintiffs consistently spoke of the valuable academic components to their training, which led the Court to conclude that "the integration of academic and practical components made Plaintiffs' clinical and classroom experiences largely one and the same." (Doc. #269, p. 18.) Plaintiffs also acknowledged the important role that the mundane "anesthesia tech" tasks they were required to perform on a daily basis as SRNAs now plays in their employment as CRNAs. (Id. at 19.) And "[i]t is undisputed that Plaintiffs were never outside the presence of a licensed anesthesia provider for the induction and emergence phases of anesthesia administration, only during the maintenance phase, at which time the surgeon was also usually in the room." (Id. at 20.)

---

[7] Counsel for Defendants observed at the hearing that while opt-in plaintiff Rosado felt uncomfortable handling pediatric cases, named plaintiff Abraham felt like he had greatly improved with those cases but did feel ill-prepared to administer epidurals. Rather than highlight a legally significant dissimilarity, however, this fact illustrates a crucial similarity: the students collectively felt that their internship experience was deficient in preparing them to handle the full spectrum of cases and procedures that a CRNA encounters. (See Doc. #269, pp. 21-22.)

The point is that while the twenty-five plaintiffs in this action had internship experiences that admittedly differed in some respects, few or none of those factual differences are "legally significant" to the question of whether Defendants' SRNA internship program violated the FLSA; they matter – if at all – only when determining who may recover and how much.[8]

As to the issue of defenses, the Court "must consider whether the defenses that apply to the opt-in plaintiffs' claims are similar to one another or whether they vary significantly" in determining whether decertification is appropriate. Morgan, 551 F.2d at 1262 (citation omitted). Having reviewed the affirmative defenses asserted in Defendants' Amended Answers (Docs. ## 30, 31), the only defense that may affect certain plaintiffs differently is the applicable statute of limitations.[9] But that fact does not support decertification. Whether a two-year or three-year statute of limitations applies in this action depends on whether the Defendants "willfully" violated the FLSA, which determination is made on a class-wide basis, rather than individually as to each plaintiff. Morgan, 551 F.3d at 1280-81. And as the Eleventh Circuit discussed in Morgan, this class-wide

---

[8] That not all plaintiffs may be entitled to the same amount of damages, or to any damages at all, does not compel decertification of a collective action. See Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1049-50 (2016).

[9] "The statute of limitations for a claim seeking unpaid overtime wages under the FLSA is generally two years. But if the claim is one 'arising out of a willful violation,' the statute of limitations is extended to three years." Morgan, 551 F.3d at 1280 (quoting 29 U.S.C. § 255(a)).

defense can be "readily and fairly managed" in a collective action by, for example, providing the jury with "charts showing the amount of back pay owed for each plaintiff for both a two-year and a three-year time period" and having the jury select the correct amount. Id. at 1265 n.47.

That leaves the third decertification factor: fairness and procedural considerations. The Court finds nothing unfair about collectively litigating the common question of whether the way in which Defendants ran the SRNA clinical internship program at issue turned Plaintiffs into "employees" under the FLSA - particularly given the manageable class size and the fact that at least twelve plaintiffs (nearly half the class) are expected to testify at trial.[10] See Morgan, 551 F.3d at 1264.

Accordingly, it is hereby

**ORDERED:**

Defendants' Motion for Decertification of Collective Action (Doc. #176) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this 14th day of April, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record

---

[10] The Court also expects to hear testimony from at least another seventeen witnesses. (Docs. ## 320, 321.)